UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STEVEN H. SEDELL,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>WELLS FARGO OF CALIFORNIA INSURANCE SERVICES, INC., a California Corporation, ACORDIA OF CALIFORNIA INSURANCE SERVICES, INC., a California Corporation, DAVID J. ZUERCHER, and individual, H. DAVID WOOD, an individual, BRIAN M. HETHERINGTON, an individual, SAMUEL L. JONES III, MARK W. STOKES, and individual PAMELA HENDRICKS, an individual, AND does 1-100, inclusive,<br><br>　　　　　Defendants. | Case No:  C 10-4043 SBA<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Docket 22. |

　　　　On June 22, 2010, Plaintiff Steven Sedell ("Plaintiff" or "Sedell") filed the instant action in the Superior Court of the State of California, County of San Francisco, alleging seven causes of action arising out of the termination of his employment.  Compl., Dkt. 1. The action was removed to this Court on the basis of federal question jurisdiction.  Notice of Removal, Dkt. 1.  The parties are presently before the Court on Defendants'[1] motion for summary judgment or, in the alternative, for partial summary judgment under Rule 56 of

---

[1] The Defendants that have moved for summary judgment are Wells Fargo Insurance Services USA, Inc., H. David Wood, Brian M. Hetherington, Samuel L. Jones III, Mark W. Stokes, and Pamela Hendricks (collectively, "Defendants").  The only named Defendants that have not moved for summary judgment are Acordia of California Insurance Services, Inc. and David Zuercher.  However, a review of the record indicates that neither of these Defendants has been served with the summons and complaint.  As such, this Court does not have jurisdiction over these Defendants.  See Direct Mail Specialists v. Eclat Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir. 1988).

1  the Federal Rules of Civil Procedure. Dkt. 22. Plaintiff opposes the motion. Dkt. 30, 31.
2  Having read and considered the papers filed in connection with this matter and being fully
3  informed, the Court hereby GRANTS Defendants' motion for summary judgment, for the
4  reasons stated below. The Court, in its discretion, finds this matter suitable for resolution
5  without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. Factual Summary

In or about September 2005, Plaintiff communicated with employees of Acordia of California Insurance Services ("Acordia") regarding a potential employment opportunity with the company. Compl. ¶ 20. Plaintiff claims that during those discussions Acordia agents made certain representations to him, including: (1) that he would be employed as a Vice President/Producer, where he would have the ability to develop high-tech business within the company; (2) that Acordia would purchase the Atmel Corporation ("Atmel") account from Plaintiff; (4) that Acordia would service and support the Atmel account, as well as other accounts that Plaintiff may acquire; and (4) that the job was a long-term position which Plaintiff could reasonably expect to maintain until his retirement. See id. ¶¶ 21-22.

In November 2005, Acordia offered Plaintiff a position with the company as a Vice President/Producer. See Sedell Dep., Exh. 2, Dkt. 23. The offer letter stated that Plaintiff would be compensated with a $125,000 annual draw, along with commissions at a rate of 35% on new business revenue and 25% on renewal business revenue. Id. at 1. The letter also stated that Plaintiff's existing client, Atmel, would be treated as renewal business and paid at a commission rate of 25%. Id.

On December 1, 2005, Plaintiff accepted the position with Acordia. Compl. ¶ 23. As part of accepting the position, Plaintiff signed an offer letter, which contains a section entitled "Conditions of Employment at Acordia." That section states, in relevant part:

> Your employment with Acordia has no specified term or length. Both you and Acordia have the right to terminate the employment relationship at any time for any reason or for no reason, with or without advance notice and with

or without cause. This is called 'employment at will' and no employee of Acordia has the authority to alter this arrangement. . . . By signing and returning the original of this letter, I accept and agree to all terms and conditions of this offer of employment.

Sedell Dep., Exh. 2. On that same day, Plaintiff also signed an employment agreement, which contains the following clauses:

> 5. <u>Employment At-Will.</u> Employee's employment with Acordia shall be at all times 'at-will' employment and nothing in this document changes Employee's 'at-will' status. Employee understands that s/he joined Acordia voluntarily and that s/he is free to resign at any time for any reason with or without cause. Acordia reserves the right to terminate Employee's employment with or without cause, and with or without notice, at any time in its sole discretion. No employee of Acordia has the authority to alter the at-will relationship.
>
> …
>
> 14. <u>Integration Clause</u>. This written Agreement supersedes any prior written or verbal agreements pertaining to the subject matter herein, and is intended to be a final expression of our Agreement with respect to the terms contained herein. There may be no modification of this Agreement except in writing signed by me and an executive vice president or higher level officer of Acordia.

Sedell Dep., Exh. 3.

Also on December 1, 2005, Plaintiff agreed to sell the Atmel account to Acordia for three annual installment payments, calculated as thirty-three percent (33%) of the account's "Net Product Line Revenues"[2] earned during the applicable anniversary year. Sedell Dep., Exh. 7. Between 2006 and 2009, Plaintiff was paid three installments payments totaling $772,292.00. Stokes Decl. ¶ 7.

Sometime after Plaintiff was hired, Acordia changed its name to Wells Fargo Insurance Services USA, Inc. ("Wells Fargo"). Wells Fargo is a worldwide insurance

---

[2] Net Product Line Revenues are defined by the Purchase Agreement as "commissions and fees . . . earned by Purchaser with respect to the Account during an anniversary year . . . consistent with Purchaser's existing revenue recognition policies[.]" Sedell Dep., Exh. 7.

brokerage firm that provides insurance brokerage and administrative services, as well as a wide range of financial and consulting services to its customers.  Stokes Decl. ¶ 1.

In 2008, Atmel decided to initiate a broker competition with other companies.  Sedell Dep. at 196:18-20.  Between 2008 and 2009, while Atmel conducted the competition, it became uncertain whether Wells Fargo would retain the Atmel account.  Id. at 48:3-18.  Plaintiff's supervisor Mark Stokes testified that in early 2009, when Atmel had yet to make their final decision, Plaintiff approached him to ascertain whether it would be possible, "if [the Atmel account] were to go under . . . 400,000 in revenue . . . that [Wells Fargo] could terminate [Plaintiff] . . . and still give him benefits."  Stokes Dep. at 48:3-9, 52:21-24.  Stokes testified that he was surprised by this request, but advised Plaintiff that he would look into the matter for him.  Id. at 49:9-11, 50:11-16.  Stokes was eventually informed by Human Resources that the arrangement Plaintiff sought was not possible for a "producer."  Id. 50:17-51:6.

In March of 2009, Atmel decided to work with a different broker and ended its relationship with Wells Fargo.  Sedell Dep. at 196:21-23.  Following the loss of the Atmel account, Stokes sent a departure agreement to Plaintiff on April 23, 2009, which outlined a termination and severance package.  Stokes Dep. at 53:13-25, 74:1-6, 76:3-5, 76:23-77:9.  However, before the specified termination date of May 14, 2009, Stokes received a letter from Plaintiff's attorney challenging Plaintiff's termination.  Id. at 63:14-19; Sedell Dep., Exh. 9.  The letter, dated May 4, 2009, states that Plaintiff has "done nothing to warrant dismissal" and that he "wishes to maintain his employment with Wells Fargo and continue a productive and amicable relationship."  Sedell Dep., Exh. 9.

In or about the middle of May 2009, Stokes met with Plaintiff to discuss placing him on a Performance Improvement Plan ("PIP") to address his non-existent business revenue and to assist him with creating a plan to start building his book of business.  Stokes Decl. ¶ 3.  Stokes also asked Plaintiff to create a business plan.  Id.  On May 27, 2009, Plaintiff was placed on a written PIP.  Stokes Dep. at 74:18-19, Exh. 2.

The purpose of the PIP was "to address [Plaintiff's] lack of business revenue and to assist [him] in creating a plan for improvement." Stokes Dep., Exh. 2. The PIP states that the Atmel account, which "represents virtually all of the revenue in [Plaintiff's] book of business, was lost in March 2009, and there was reason to anticipate at least a significant decline in revenue from that account as early as Q4 of 2008. However, [Plaintiff has] not identified any specific prospects or generated any new business." Id.

The PIP identifies two objectives that Plaintiff "must" meet in order to bring his performance to at least the minimum acceptable level for his position: (1) Plaintiff must develop at least 1-2 new business appointments per week and a minimum of 6 per month with a decision maker in a company with a revenue minimum of $25,000 for property and casualty insurance; and (2) Plaintiff must produce $125,000 of annualized new business revenue, and must generate a minimum of $31,250 in estimated new revenue by October 2009. Stokes Dep., Exh. 2. The PIP advises Plaintiff that it constitutes an "informal warning," and that "[i]mmediate and sustained performance improvement is required in order to avoid further corrective action, up to and including termination of employment." Id. The PIP also advises Plaintiff that the "[f]ailure to demonstrate immediate and sustained improvement in each of [the identified] areas may lead to further disciplinary action, up to and including termination of employment." Id.

On or around August 31, 2009, Plaintiff received a "Formal Warning" from Wells Fargo for failing to meet the expectations set forth in the PIP. Stokes Dep., Exh. 3. The Formal Warning states that Plaintiff has "not met the minimum goals outlined three months ago." Id. Specifically, it states that Plaintiff has only had 3 meetings with potential accounts (one of which did not meet the revenue minimum of $25,000) when he was required to have a minimum of 6 meetings per month. Id. It also states that Plaintiff has not generated any new business revenue, and therefore had not made progress towards the $31,250 minimum goal he was expected to meet by October 2009. Id. The Formal Warning advises Plaintiff that his performance over the last three months is "not acceptable," and that his "employment may be terminated if [Wells Fargo] do[es] not see immediate and sustained performance improvement." Id.

In November 2009, Plaintiff was terminated for failure to meet Wells Fargo's standards, i.e., unsatisfactory job performance. Sedell Dep. at 334:2-335:18. According to Plaintiff, he did not generate any business revenue from May 2009 when he was placed on the PIP until he was terminated in November 2009. Id. at 334:2-6.

### B. Procedural History

On June 22, 2010, Plaintiff commenced the instant action in the San Francisco Superior Court, alleging seven causes of action against Defendants, including a federal cause of action for age discrimination. See Compl. Defendants removed the action to this Court on the basis of federal question jurisdiction. Notice of Removal ¶ 7.

On December 22, 2011, Defendants filed a motion for summary judgment. Dkt. 22. Plaintiff filed an opposition on February 10, 2012. Dkt. 31. A reply was filed on February 14, 2012. Dkt. 32.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is proper if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). When the nonmoving party bears the burden of proving the claim, the moving party need only point out through argument that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001); Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 532 (9th Cir. 2000). Summary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to her case, and on which she will bear the burden of proof at trial. Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 805-806 (1999).

Once the moving party has met its burden, the burden shifts to the nonmoving party to designate specific facts showing a genuine issue for trial. Celotex, 477 U.S. at 324. A

party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A).

To carry its burden, the nonmoving party must show more than the mere existence of a scintilla of evidence, Anderson, 477 U.S. at 252, and "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In fact, the nonmoving party must come forth with evidence from which a jury could reasonably render a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 252. In determining whether a jury could reasonably render a verdict in the nonmoving party's favor, all justifiable inferences are drawn in the nonmoving party's favor. Id. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Dias v. Nationwide Life Ins. Co., 700 F.Supp.2d 1204, 1214 (E.D. Cal. 2010). To establish a genuine dispute of material fact, a Plaintiff must present affirmative evidence; bald assertions that genuine issues of material fact exist are insufficient. Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007). Further, evidence that is merely colorable or that is not significantly probative, is not sufficient to withstand a motion for summary judgment. Anderson, 477 U.S. at 249-250 (citations omitted).

### B. Motion for Summary Judgment

Defendants move for summary judgment on all seven causes of action alleged in the complaint. In response, Plaintiff contends that, "with the exception of not meeting the requirement set forth in California Labor Code 970 with respect to changing his residence," summary judgment should be denied because "there are genuine factual disputes with respect to every other cause of action." Pl.'s Opp. at 11.

///

**1.     Violation of Labor Code § 970**

Plaintiff's first cause of action alleges a violation of California Labor Code § 970, which prohibits employers from "inducing employees 'to change from one place to another . . . for the purpose of working in any branch of labor, through or by means of knowingly false representations' concerning the nature, duration or conditions of employment." Eisenberg v. Alameda Newspapers, Inc., 74 Cal.App.4th 1359, 1392 (1999). Because Plaintiff concedes that he cannot establish an essential element of this claim; namely, that Wells Fargo induced him to relocate or change his residences, see Pl.'s Opp. at 11, summary judgment in favor of Defendants is appropriate. See id. ("under the statute an employee must establish that the employer induced him or her to relocate or change residences"). Accordingly, summary judgment as to Plaintiff's first cause of action is GRANTED.

**2.     Intentional Misrepresentation and Negligent Misrepresentation**

Plaintiff's second cause of action alleges a claim for intentional misrepresentation, while his third cause of action alleges a claim for negligent misrepresentation. The elements of a cause of action for fraud are: (1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages. Cadlo v. Owens-Illinois, Inc., 125 Cal.App.4th 513, 519 (2004) (citing Small v. Fritz Cos., Inc., 30 Cal.4th 167, 173, 132 (2003)). The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance. Id.

Defendants move for summary judgment on the ground that Plaintiff cannot establish the elements of these claims. Defs.' Mot. at 13-15. In response, Plaintiff merely states that the second and third causes of action "present genuine disputes as to material facts, specifically as to the representations made by Pamela Hendricks to induce [Plaintiff] to return to employment in May 2009 thus protecting Wells Fargo from anticipated litigation." Pl.'s Opp. at 11.

1   The Court finds that summary judgment is appropriate with respect to Plaintiff's
2 intentional misrepresentation and negligent misrepresentation claims. Defendants met their
3 initial burden on summary judgment by pointing out through argument that Plaintiff does
4 not have sufficient evidence to support these claims. See Fairbank, 212 F.3d at 532.
5 Plaintiff, however, failed to sustain his burden to designate specific facts showing that there
6 is a genuine issue for trial. Celotex, 477 U.S. at 324. Plaintiff's bald assertion that "there
7 are genuine disputes as to material facts" supported by a general reference to
8 "representations made by Pamela Hendricks" without citation to evidence is insufficient to
9 withstand a motion for summary judgment. Mere assertions in a legal brief without factual
10 support are insufficient to create a genuine issue of material fact for trial. See Surrell v.
11 California Water Service Co., 518 F.3d 1097, 1103 (9th Cir. 2008) ("Conclusory statements
12 without factual support are insufficient to defeat a motion for summary judgment."); Galen,
13 477 F.3d at 658 (bald assertions that genuine issues of material fact exist are insufficient to
14 establish a genuine dispute of material fact); S.A. Empresa de Viacao Aerea Rio Grandense
15 v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir. 1982) ("a party cannot manufacture a
16 genuine issue of material fact merely by making assertions in its legal memoranda").

17   Thus, because Plaintiff failed to cite to particular materials in the record
18 demonstrating a genuine issue for trial, summary judgment in favor of Defendants is
19 appropriate. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir.
20 2003) (the party opposing summary judgment must direct the court's attention to specific,
21 triable facts, general references without page or line numbers are not sufficiently specific);
22 Fed.R.Civ.P. 56(c)(1)(A) (a party asserting that a fact is genuinely disputed must support
23 the assertion by "citing to particular parts of materials in the record"); see also Forsberg v.
24 Pac. Northwest Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir.1988) (courts are not required
25 to comb the record to find some reason to deny a motion for summary judgment).
26 Accordingly, summary judgment as to Plaintiff's second and third causes of action is
27 GRANTED.
28 ///

### 3. Concealment

Plaintiff's fourth cause of action alleges a claim for concealment. "Concealment is a species of fraud or deceit." Blickman Turkus, L.P. v. MF Downtown Sunnyvale, LLC, 162 Cal.App.4th 858, 868 (2008). The elements of an action for fraud and deceit based on concealment are: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." Id.

Defendants move for summary judgment on the ground that Plaintiff cannot establish the second, third, fourth, or fifth elements of this claim. Defs.' Mot. at 15-16. In response, Plaintiff argues that there are "genuine disputes as to material facts, specifically with respect to issues related to ABD [Insurances Services, Inc.], the actions of Wells Fargo toward Atmel and how it impacted [Plaintiff's] continued employment that were never disclosed to [Plaintiff], and the intentional withholding of information from [Plaintiff] that Wells Fargo intended to involuntarily terminate [Plaintiff's] employment if Atmel were lost as an account." Pl.'s Opp. at 11.

The Court finds that summary judgment in favor of Defendants is appropriate with respect to Plaintiff's concealment claim. Defendants met their initial burden on summary judgment by pointing out through argument that Plaintiff does not have sufficient evidence to support this claim. See Fairbank, 212 F.3d at 532. Plaintiff, however, failed to sustain his burden to designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. Plaintiff's bald assertion that there are "genuine disputes as to material facts" without citation to evidence is insufficient to withstand a motion for summary judgment. Mere assertions in a legal brief without factual support are insufficient to create a genuine issue of material fact for trial. See Surrell, 518 F.3d at 1103. Thus,

because Plaintiff did not cite to particular materials in the record demonstrating a genuine issue for trial, summary judgment in favor of Defendants is warranted. See Southern Cal. Gas Co., 336 F.3d at 889 (the party opposing summary judgment must direct the court's attention to specific, triable facts). Accordingly, summary judgment as to Plaintiff's fourth cause of action is GRANTED.

### 4. Breach of Oral Contract

Plaintiff's fifth cause of action alleges a claim for breach of oral contract. Plaintiff alleges that, in November 2005, before he accepted employment with Acordia, he entered into an oral contract with Acordia through representations made by agents of Acordia that limited Wells Fargo's right to terminate his employment. Compl. ¶¶ 61-62. According to Plaintiff, Wells Fargo breached this oral contract by, among other things, terminating his employment in November 2009. Id. ¶ 64.

The standard elements of a claim for breach of contract are: (1) the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage to plaintiff therefrom. Abdelhamid v. Fire Ins. Exchange, 182 Cal.App.4th 990, 999 (2010); Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal.App.3d 1371, 1388 (1990).

Defendants move for summary judgment on the grounds that: (1) Plaintiff has no evidence that Wells Fargo entered into an oral contract regarding guaranteed long-term employment; (2) even if Plaintiff and Wells Fargo had an oral contract limiting Wells Fargo's at-will termination right, they modified that implied contract with an express at-will agreement dated December 1, 2005; and (3) as a matter of law, the express at-will agreement precludes an alleged oral contract limiting Wells Fargo's at-will termination right. Defs.' Mot. at 16-18. In response, Plaintiff does not address the arguments made by Defendants. Instead, he argues, without citation to evidence, that there are "genuine disputes as to material facts, specifically as to the oral agreement by Wells Fargo to induce [Plaintiff] to return to employment after wrongfully terminating him in April, 2009 under the ruse that he had quit voluntarily, when, in fact, he had not." Pl.'s Opp. at 11.

- 11 -

The Court finds that summary judgment is appropriate with respect to Plaintiff's breach of oral contract claim. Defendants met their initial burden on summary judgment by pointing out through argument that Plaintiff does not have sufficient evidence to support this claim. See Fairbank, 212 F.3d at 532. Plaintiff, however, failed to sustain his burden to designate specific facts showing that there is a genuine issue for trial on the existence of an oral contract. Celotex, 477 U.S. at 324. Plaintiff's bald assertion that there are "genuine disputes as to material facts" without citation to evidence is insufficient to withstand a motion for summary judgment. Mere assertions in a legal brief without factual support are insufficient to create a genuine issue of material fact for trial. See Surrell, 518 F.3d at 1103. Thus, because Plaintiff did not cite to particular materials in the record demonstrating a genuine issue for trial, summary judgment in favor of Defendants is warranted. See Southern Cal. Gas Co., 336 F.3d at 889 (the party opposing summary judgment must direct the court's attention to specific, triable facts).

Moreover, even assuming that Wells Fargo and Plaintiff entered into an enforceable oral contract in November 2005, this contract was superseded by the written agreements Plaintiff signed on December 1, 2005, which specifically state that he is an at-will employee, Sedell Dep., Exhs. 2-3. See Cal. Civ. Code § 1625 (California law presumes that a written contract supersedes all prior or contemporaneous oral agreements.). Indeed, one of the agreements expressly states that Plaintiff's "employment with [Wells Fargo] shall be at all times 'at-will[,]' " and that "[t]his written Agreement supersedes any prior written or verbal agreements pertaining to the subject matter herein, and is intended to be a final expression of our Agreement with respect to the terms contained herein." Sedell Dep., Exh. 3.

Finally, to the extent that Plaintiff attempts to avoid summary judgment by asserting a new claim for the first time in his opposition to Defendants' motion for summary judgment, this is not a proper basis to oppose a motion for summary judgment. Although unclear, Plaintiff appears to claim in his opposition brief that Wells Fargo and Plaintiff entered into an oral contract after Plaintiff was wrongfully terminated in April, 2009.

1    Setting aside the fact that Plaintiff did not direct the Court to any evidence in support of this
2    claim, a party may not oppose summary judgment on a ground that is not in issue under the
3    pleadings.  See Trishan Air, Inc. v. Federal Ins. Co., 635 F.3d 422, 435 (9th Cir. 2011)
4    (citing Wasco Prods., Inc. v. Southwall Tech., Inc., 435 F.3d 989, 992 (9th Cir. 2006) ("The
5    necessary factual averments are required with respect to each material element of the
6    underlying legal theory.  Simply put, summary judgment is not a procedural second chance
7    to flesh out inadequate pleadings.") (citation and alterations omitted )).  Nowhere in the
8    complaint does Plaintiff allege that the parties entered into an oral agreement after Plaintiff
9    was allegedly wrongfully terminated in April 2009.[3]  Thus, any claim predicated on this
10   alleged agreement is not properly before the Court.  Trishan, 635 F.3d at 435.  Accordingly,
11   summary judgment as to Plaintiff's fifth cause of action is GRANTED.

### 5.    Breach of Implied Contract

13        Plaintiff's sixth cause of action alleges a claim for breach of implied contract.
14   Among other things, Plaintiff alleges that Wells Fargo breached the terms of the parties'
15   implied contract by "wrongfully terminating him without good cause and/or proper notice."
16   Compl. ¶ 72.
17        To succeed on a breach of implied-in-fact contract claim, a plaintiff must prove the
18   same elements as a breach of contract claim, except that the contract is proved by the
19   conduct of the parties, not the express wording of a written contract.  Kurlan v. Columbia
20   Broadcasting System, Inc., 40 Cal.2d 799, 811 (1953); Thompson v. California Brewing
21   Co., 150 Cal.App.2d 469, 473 (1957).  As previously indicated, the standard elements of a
22   claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for
23   nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.
24   Abdelhamid, 182 Cal.App.4th at 999; Careau, 222 Cal.App.3d at 1388.

---

[3] To the contrary, the Court notes that the allegations in the complaint contradict Plaintiff's contention in his opposition that he and Wells Fargo entered into an oral contract after he was allegedly wrongfully terminated in April 2009.  The complaint alleges that Plaintiff "worked continuously for Acordia and Wells Fargo from an effective start date on or about December 1, 2005, until his wrongful termination on or about November 2, 2009."  Compl. ¶ 67.

Defendants move for summary judgment on the ground that Plaintiff, among other things, cannot establish the existence of a valid implied contract. Defs.' Mot. at 18. Defendants argue that the written agreement signed by Plaintiff establishing that he is an "at-will" employee cannot be overcome by proof of an implied contrary understanding. Id. at 19-20. In response, Plaintiff merely asserts that there are "genuine disputes as to material facts because the parol evidence rule does not act as a blanket defense for the ongoing misleading statements that were made by Wells Fargo to [Plaintiff] throughout his employment presumably to keep Atmel as an account for Wells Fargo." Pl.'s Opp. at 11. Plaintiff also contends that "there was no written agreement, and therefore no integration clause, in the second agreement entered into between [Plaintiff] and Wells Fargo when Wells Fargo offered to have [Plaintiff] return to work in May, 2009." Id. at 11-12.

The Court finds that summary judgment is appropriate with respect to Plaintiff's breach of implied contract claim. Plaintiff failed to establish a triable issue concerning the existence of an implied contract providing that Plaintiff could only be terminated for good cause after "proper" notice. As noted above, Plaintiff signed two written agreements on December 1, 2005, which both specifically state that Plaintiff is an "at-will" employee. Sedell Dep., Exhs. 2-3. The employment agreement signed by Plaintiff expressly states that "Acordia reserves the right to terminate [Plaintiff's] employment with or without cause, and with or without notice, at any time in its sole discretion." Sedell Dep., Exh. 3. The Court finds that the clear and unambiguous at-will provision in the written employment agreement signed by Plaintiff controls and cannot be overcome by an implied contrary understanding. See Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 340 n. 10 (2000) ("most cases applying California law,[ ] have held that an at-will provision in an express written agreement, signed by the employee, cannot be overcome by proof of an implied contrary understanding"); Halverson v. Aramark Uniform Services, 65 Cal.App.4th 1383, 1390 (1998) ("an implied-in-fact promise not to terminate except for good cause cannot contradict the contractual at-will provision").

1    Plaintiff, for his part, has not cited any authority or evidence demonstrating that
2 summary judgment is inappropriate with respect to this claim. While Plaintiff's opposition
3 vaguely references "ongoing misleading statements that were made by Wells Fargo,"
4 Plaintiff did not direct the Court to the portions of the record where these statements are
5 located as required by Rule 56. See Fed.R.Civ.P. 56(c)(1)(A) (a party asserting that a fact
6 is genuinely disputed must support the assertion by "citing to particular parts of materials in
7 the record."). Nor did Plaintiff cite any authority or provide any analysis in support of his
8 contention that summary judgment is not warranted because "the parol evidence rule does
9 not act as a blanket defense for the ongoing misleading statements."
10    Finally, to the extent that Plaintiff attempts to defeat summary judgment by claiming
11 that the parties entered into a second oral agreement "when Wells Fargo offered to have
12 [Plaintiff] return to work in May, 2009," this is not a proper basis to oppose Defendants'
13 motion for summary judgment. A party may not oppose summary judgment on a ground
14 not in issue under the pleadings. See Trishan, 635 F.3d at 435; Wasco, 435 F.3d at 992.
15 Nowhere in the complaint does Plaintiff allege that the parties entered into a second oral
16 agreement "when Wells Fargo offered to have [Plaintiff] return to work in May, 2009."
17 Thus, any claim predicated on this alleged agreement is not properly before the Court.
18 Trishan, 635 F.3d at 435. Accordingly, summary judgment as to Plaintiff's sixth cause of
19 action is GRANTED.

### 6.   Age Discrimination

21    Plaintiff's seventh cause of action alleges a claim for age discrimination in violation
22 of Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, et seq., the Age
23 Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and the California
24 Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900, et seq.
25 Defendants move for summary judgment on the grounds that Plaintiff: (1) cannot establish
26 a prima facie case of discrimination; (2) Wells Fargo had a legitimate, non-discriminatory
27 reason for terminating Plaintiff's employment; and (3) Plaintiff cannot show that Wells
28 Fargo's legitimate, non-discriminatory reason is a pretext for intentional age discrimination.

1  Defs.' Mot. at 21-24.  In response, Plaintiff argues that there are "genuine disputes as to
2  material facts because Wells Fargo had no legitimate reason to terminate [Plaintiff]."  Pl.'s
3  Opp. at 12.  Plaintiff asserts that Wells Fargo "allege[s] that they terminated [Plaintiff]
4  because he had no book of business after the company lost Atmel, but at the same time, was
5  employing younger producers who had no books of business for lesser compensation."  Id.
6    Under the ADEA, it is unlawful for any employer to take an adverse action against
7  an employee "because of such individual's age."  29 U.S.C. § 623(a).  To establish a
8  violation of ADEA under the disparate treatment theory of liability, a plaintiff must first
9  establish a prima facie case of discrimination.  Coleman v. Quaker Oats Co., 232 F.3d
10 1271, 1280-1281 (9th Cir. 2000).  The prima facie case may be based either on a
11 presumption arising from the factors such as those set forth in McDonnell Douglas Corp. v.
12 Green, 411 U.S. 792, 796 n. 4 (1973), or by direct evidence of discriminatory intent.  See
13 Wallis v. J.R. Simplot Co., 26 F.3d 885, 888-889 (9th Cir. 1994) (noting that the burdens of
14 proof and persuasion are the same for Title VII and ADEA claims); see also E.E.O.C. v.
15 Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009).
16   Direct evidence is defined as "evidence of conduct or statements by persons
17 involved in the decision-making process that may be viewed as directly reflecting the
18 alleged discriminatory attitude . . . sufficient to permit the fact finder to infer that that
19 attitude was more likely than not a motivating factor in the employer's decision."  Enlow v.
20 Salem-Keizer Yellow Cab Co., Inc., 389 F.3d 802, 812 (9th Cir. 2004) (quotation marks
21 omitted).  Direct evidence is evidence, which, if believed, proves the fact of discriminatory
22 animus without inference or presumption.  Dominguez-Curry v. Nevada Transp. Dept.
23 424 F.3d 1027, 1038 (9th Cir. 2005).  " 'Direct evidence typically consists of clearly sexist,
24 racist, or similarly discriminatory statements or actions by the employer.' "  Id.
25   In the absence of direct evidence, a plaintiff may establish a prima facie case of age
26 discrimination using circumstantial evidence by showing that he was: "(1) at least forty
27 years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by
28 substantially younger employees with equal or inferior qualifications or discharged under

1  circumstances otherwise 'giving rise to an inference of age discrimination.' " Diaz v. Eagle
2  Produce Ltd. Partnership, 521 F.3d 1201, 1207 (9th Cir. 2008).  "Generally, an employee
3  can satisfy the last element of the prima facie case only by providing evidence that he or
4  she was replaced by a substantially younger employee with equal or inferior qualifications."
5  Id. at 1207 n. 2.
6       FEHA prohibits employers from discharging or dismissing any employee over 40
7  years old based on the employee's age.  Earl v. Nielsen Media Research, Inc., 658 F.3d
8  1108, 1112 (9th Cir. 2011) (citing Cal. Gov't Code §§ 12926(b), 12940(a)).  Because state
9  and federal employment discrimination laws are similar, California courts look to federal
10 precedent when interpreting FEHA.  Earl, 658 F.3d at 1112 (citing Guz, 24 Cal.4th at 354).
11 In particular, California courts use the familiar McDonnell Douglas burden-shifting test
12 when analyzing disparate treatment claims under FEHA.  Earl, 658 F.3d at 1112.
13      Under the three-part McDonnell Douglas test, the plaintiff bears the initial burden of
14 establishing a prima facie case of employment discrimination.  Earl, 658 F.3d at 1112.
15 Once the plaintiff has done so, the burden shifts to the employer to articulate a legitimate,
16 nondiscriminatory reason for its actions.  Id.  If the employer articulates a legitimate reason,
17 the plaintiff must raise a triable issue that the employer's proffered reason is pretext for
18 unlawful discrimination.  Id.  The ultimate burden of persuasion remains with the plaintiff.
19 Id.
20      The Court finds that summary judgment is appropriate with respect to Plaintiff's age
21 discrimination claim.  As an initial matter, to the extent that Plaintiff's age discrimination
22 claim is predicated on a violation of Title VII, it fails as a matter of law because age
23 discrimination is not within the ambit of Title VII.  See 42 U.S.C. 2000e-2(a)(1) (it is
24 unlawful for an employer "to fail or refuse to hire or to discharge any individual, or
25 otherwise to discriminate against any individual with respect to his compensation, terms,
26 conditions, or privileges of employment, because of such individual's race, color, religion,
27 sex, or national origin").  Age discrimination claims are covered by the ADEA.  See 29
28 U.S.C. § 621; Shelley v. Geren, 666 F.3d 599, 606-607 (9th Cir. 2012).

As for Plaintiff's contention that Defendants discriminated against him on the basis of age in violation of the ADEA and FEHA, Plaintiff failed to present direct or circumstantial evidence establishing a prima facie case of discrimination. Specifically, Plaintiff failed to direct the Court to any evidence demonstrating a triable issue concerning whether his job performance was satisfactory and whether he was replaced by a substantially younger employee with equal or inferior qualifications or was discharged under circumstances otherwise giving rise to an inference of age discrimination.[4] As a consequence, Plaintiff has not sustained his burden to designate specific facts showing that there is a genuine issue for trial on the existence of the elements of a prima facie case of age discrimination. Celotex, 477 U.S. at 324. Plaintiff's bald assertion that there are "genuine disputes as to material facts" without citation to evidence is insufficient to withstand a motion for summary judgment. See Southern Cal. Gas Co., 336 F.3d at 889 (the party opposing summary judgment must direct the court's attention to specific, triable facts). Mere assertions in a legal brief without factual support are insufficient to create a genuine issue of material fact for trial. See Surrell, 518 F.3d at 1103.

Moreover, even assuming for the sake of argument that Plaintiff established a prima facie case of age discrimination, he failed to raise a triable issue concerning whether Wells Fargo's proffered reason for his termination, i.e., unsatisfactory job performance, was a pretext for unlawful discrimination. Defendants provided evidence demonstrating that Plaintiff was terminated for failure to meet the requirements of the PIP. See Stokes Dep. 137:12-22, Exhs. 2-3. Plaintiff, however, did not direct the Court to any evidence in the record raising a triable issue on the question of pretext.

"A plaintiff may demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly,

---

[4] In fact, Plaintiff testified that he does not know whether someone was hired to replace him after he left Wells Fargo, and that he is not aware of any producers that were treated more favorably than him because of their age, including producers under the age of forty. Sedell Dep. at 120:14-12. Plaintiff also testified that he did not generate any business revenue from May 2009 when he was placed on the PIP until he was terminated in November 2009, id. at 334:2-6, as required by the PIP. See Stokes Dep., Exh. 2.

by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." Earl, 658 F.3d at 1112-1113. "Where evidence of pretext is circumstantial, rather than direct, the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext." Id. at 1113.  Plaintiff did not present direct evidence, such as comments from supervisors demonstrating or suggesting bias or animus against older workers. See id. Nor did he present "specific" and "substantial" facts creating a triable issue of pretext.  Plaintiff did not cite any evidence showing that Wells Fargo's proffered explanation for his termination, i.e., unsatisfactory job performance, is unworthy of credence because it is internally inconsistent or otherwise unbelievable.  Indeed, as noted above, Plaintiff concedes that he did not generate any business revenue from May 2009 when he was placed on the PIP until he was terminated in November 2009, Sedell Dep. at 334:2-6, as required by the PIP. See Stokes Dep., Exh. 2.

### III. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Defendants' motion for summary judgment is GRANTED.

2. This Order terminates Docket 22.

3. The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: 7/20/12

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge